COMMONWEALTH *vs.* MICHAEL J. CARDALEEN. No. 88-P-141. October 19, 1988. *Search and Seizure,* Automobile, Threshold police inquiry. *Constitutional Law,* Search and seizure, Self-incrimination. *Threshold Police Inquiry. Waiver. Evidence,* Relevancy and materiality, Impeachment of

credibility, Cross-examination. *Practice, Criminal,* Cross-examination by prosecutor, Failure to make objection.

The defendant was charged with possession of a sawed-off shotgun, carrying a dirk knife, and carrying a knife with a double-edged blade. He was convicted on all three charges after a jury-waived trial at which the only material considered by the judge was a stipulation that the evidence which had been presented earlier on the defendant's motion to suppress could be considered on the question of his guilt. At the suppression hearing before the same judge, questions had been put to the defendant on cross-examination which he claims on appeal were improper. He urges, therefore, that we set aside both the denial of the motion to suppress and the convictions on all three charges. We affirm.

Briefly, the evidence presented on the motion to suppress was as follows. State Trooper James Gilhooley, alone in his cruiser at about 8:00 P.M., pulled two vehicles to a stop. The defendant, the operator of one of the two vehicles, attempted to pass the cruiser but was stopped when the cruiser pulled in front of him. The officer had observed the vehicles operating erratically and dangerously on the highway, one seemingly in pursuit of the other. The other operator, one Henry A. Patturelli, immediately told the officer that the defendant had been harassing him on the road. The officer instructed both operators to stand by their cars. He pat frisked the defendant but found nothing. The defendant kept moving away from the rear of his car where he had been ordered to remain. The door to the driver's side of the defendant's car was partly open, and Trooper Gilhooley claimed to have seen, with the aid of his flashlight, the top half of a large knife. At some point during the incident, the defendant told the officer that he had an object in the car that looked like a real gun but was not. The officer entered the vehicle and found the fake gun, a sawed-off double-barrel shotgun, a double-edged knife, and a hunting knife. The defendant's testimony conflicted with Trooper Gilhooley's with respect to some details.

On cross-examination, the defendant was asked numerous questions about each of the weapons. The questions went beyond inquiries about the weapons' appearance and location in the car. In response, the defendant revealed that he owned the shotgun, had cut the barrel with a hacksaw, and had altered the stock to give it a pistol grip. The defendant explained that it was "a show and tell type of thing" with his friends and that the shotgun had never been loaded or fired. He said that the fake gun had been left in his car by someone else. He admitted ownership of both knives. He testified that he had the double-edged knife for use on camping trips as a utility knife for "clearing stuff and cutting wood." As to all the weapons, he said he had "no real purpose" in possessing them. Midway in the cross-examination, defense counsel objected to the questions on grounds of relevance. The judge overruled the objection, saying the responses would be relevant to test the defendant's credibility. Later, the objection was renewed, and again it was denied. At no time was a motion made to strike the answers.

In his memorandum of decision, the judge found facts consistent with Trooper Gilhooley's version of the incident and (relying on *Terry* v. *Ohio*, 392 U.S. 1 [1968], *Commonwealth* v. *Silva*, 366 Mass. 402, 405, 408 [1974], *Commonwealth* v. *Almeida*, 373 Mass. 266, 270 [1977], and *Commonwealth* v. *Bacon*, 381 Mass. 642, 643 [1980]) ruled that the stop was justified, that the officer had reasonable grounds to believe that a weapon was in the car, and that the scope of the search was reasonable. He therefore denied the motion to suppress the evidence.

Requiring the defendant to answer the questions about his ownership of the weapons and his reasons for having them in the car did not violate his Fifth Amendment rights. He had counsel to advise him, but he did not at any point during the hearing raise the Fifth Amendment as a reason for objecting. Having testified freely and voluntarily, he waived his privilege against self-incrimination. See *Commonwealth* v. *Velez*, 15 Mass. App. Ct. 139, 142 (1983). Compare *Taylor* v. *Commonwealth*, 369 Mass. 183, 185-186, 189-193 (1975); *Loud* v. *Loud*, 386 Mass. 473, 476 (1982). The questions were improper, nonetheless, as they were irrelevant to the only issue being tried at the suppression hearing, the validity of the search. Relating, as they did, to prior bad acts, they were not proper questions to test the defendant's credibility. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 573 (1985); *Commonwealth* v. *Hightower*, 400 Mass. 267, 271 (1987). Thus, it is arguable that the judge's findings of fact and, hence, his ultimate conclusions on the motion to suppress, could have been affected by his consideration of the answers to the improper questions. The error in allowing the cross-examination to extend to irrelevant matters, however, does not, in our view, require reversal of either the finding on the motion to suppress or the convictions.

There is a question at the outset whether the defendant adequately preserved his appellate rights by a timely objection to the improper cross-examination. See Mass.R.Crim.P. 22, 378 Mass. 892 (1979). Several questions were asked and answered about how the defendant had acquired the shotgun and its appearance when he acquired it, before an objection was first taken. The objection should have been made sooner, and counsel should have moved to strike the offensive answers. See *Commonwealth* v. *Cancel*, 394 Mass. at 571; *Commonwealth* v. *Baptiste*, 372 Mass. 700, 706 (1977). On the other hand, the judge invited some informality when he stated in response to an earlier objection by defense counsel, "We're not in front of a jury. He's not impressing me with editorials. This is not a jury trial. Your objection is noted." Also, the record convinces us that the judge understood the reason for the objection reasonably early in the lengthy inquiry and ruled clearly, if erroneously, that he could consider the answers with respect to the defendant's credibility. It may be that the impact of the general rule regarding timely objections and motions to strike should be relaxed when we are reviewing a matter heard by a judge sitting without a jury, at least where a clear and meritorious objection was made reasonably soon after the

inquiry began, and the testimony was seriously prejudicial and likely to affect the outcome. We need not reach the question of the sufficiency of the procedural steps taken by defense counsel in this case, however, as the answers to the improper questions, considered in context, had only slight, if any, potential for prejudice.

Testimony from both Trooper Gilhooley and Patturelli had informed the judge of the defendant's aggressive and dangerous operation on the highway. The judge had also properly been made aware of the number and nature of the weapons found in the car and of the fact that the defendant was its sole occupant. As a result of the improper cross-examination, the judge learned, in addition, that the defendant owned all the weapons except the fake gun and that it was he who had cut the barrel of the shotgun and altered it in other respects. There was no indication, however, that the shotgun had ever been loaded or fired or that any of the weapons had been used in connection with any wrongdoing. To the extent that the defendant had reasons for having the weapons with him, they were to impress his friends or to use in camping. Given what the judge properly knew about the defendant's conduct and the weapons, we do not regard the potential prejudice as sufficiently momentous to invalidate the findings.

We do not intimate that, had the judge resolved all the factual conflicts in the defendant's favor, there would have been a basis for the judge to conclude that the trooper's search for weapons, in the circumstances, was unauthorized. As the defendant admits that the door to his car was at least partly open and the officer was not always in his presence, he was not competent to state whether the officer could or could not have seen the knife in plain view in the vehicle before he entered it to make a more thorough search. In the circumstances (including the hour of night, the fact that Trooper Gilhooley was the only officer on the scene, Patturelli's statement to Trooper Gilhooley that he had been harassed by the defendant on the highway, and the fact that the defendant did not remain at the rear of his car where he had been ordered by the officer to remain), once the officer saw the knife, he probably had reason to suspect that there might be other weapons in the car and to be in reasonable fear for his safety as well as that of Patturelli. If so, Trooper Gilhooley had the right to enter the car to search for weapons. *Terry* v. *Ohio*, 392 U.S. at 20-27. *Michigan* v. *Long*, 463 U.S. 1032, 1049-1052 (1983). *Commonwealth* v. *Ling*, 370 Mass. 238, 241-242 (1976). *Commonwealth* v. *Almeida*, 373 Mass. at 270-273. *Commonwealth* v. *Corridori*, 11 Mass. App. Ct. 469, 476-478 (1981). Contrast *Commonwealth* v. *Silva*, 366 Mass. 402 (1974).

The evidence obtained in the search was overwhelming on the issue of the defendant's guilt of the offenses charged. With the aid of counsel, the defendant made a tactical decision to preserve his right to appeal the denial of the motion to suppress but to forgo a serious contest before a jury on the merits of the charges.                    *Judgments affirmed.*

*Yvonne P. Toyloy,* Committee for Public Counsel Services, for the defendant.

*Rosemary D. Mellor,* Assistant District Attorney, for the Commonwealth.