COMMONWEALTH *vs.* SEAN WALKER.

Suffolk. February 10, 2005. - April 13, 2005.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Practice, Criminal,* New trial, Plea, Assistance of counsel, Waiver. *Constitutional Law,* Assistance of counsel, Search and seizure. *Search and Seizure,* Threshold police inquiry.

This court concluded that a criminal defendant's plea counsel did not render constitutionally ineffective assistance when he advised the defendant that there was no basis on which to appeal from the judge's denial of his suppression motion, given the state of the law at that time and the lack of any evidence that the defendant relied on that advice when he pleaded guilty. [871-876]

INDICTMENTS found and returned in the Superior Court Department on June 11, 1991.

A motion for a new trial, filed on May 3, 2002, was considered by *Charles T. Spurlock*, J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Estera Halpern* for the defendant.

*Donna Jalbert Patalano*, Assistant District Attorney, for the Commonwealth.

GREANEY, J. The defendant seeks to withdraw guilty pleas entered January 7, 1992, on indictments charging unlawful possession of a firearm, second offense, and unlawful possession of ammunition. The charges stemmed from an investigatory stop of the defendant initiated by officers of the Metropolitan District Commission (MDC) who had received a report of an armed robbery that had just been committed in the vicinity by "two black guys." While conducting a protective pat-down search of the defendant, the officers recovered a loaded .32 caliber

handgun.[1] The defendant's motion to suppress the handgun and ammunition was denied by a judge in the Superior Court. The defendant subsequently entered guilty pleas on both indictments and was sentenced to a term of five years at the Massachusetts Correctional Institution at Concord (MCI, Concord) on the conviction of unlawful possession of a firearm.[2]

In 1997, after serving the entire sentence, the defendant filed a pro se motion to withdraw his guilty pleas and be granted a new trial, pursuant to Mass. R. Crim. P. 30 (b), 378 Mass. 900 (1979). In his motion and supporting affidavit, the defendant asserted that his plea was involuntary because his plea counsel had pressured him into pleading guilty and had advised him that to do so would result in his serving "less time." The defendant's motion was denied by the same judge who had accepted his guilty pleas five years earlier. The defendant did not appeal from the order of denial.

In 2002, the defendant (now represented by counsel) filed a subsequent motion pursuant to Mass. R. Crim. P. 30 (b), as appearing in 435 Mass. 1501 (2001), asserting that his pleas were involuntary because (1) they were based on incompetent advice from his plea counsel that to appeal from the denial of his suppression motion would be fruitless and (2) neither the judge nor plea counsel had advised him of the mandatory minimum sentence on the conviction of unlawful possession of a firearm, second offense. The defendant, his appellate counsel, and his plea counsel submitted affidavits in support of the new trial motion. The motion was denied without a hearing by a different judge (the judge who accepted the defendant's guilty pleas and denied his original pro se motion for a new trial had since been appointed to the Appeals Court). The denial was affirmed by the Appeals Court in an unpublished decision pursuant to its rule 1:28. *Commonwealth* v. *Walker*, 59 Mass. App. Ct. 1112 (2003). We granted the defendant's application for further appellate review and, after oral argument, remanded the case to the Superior Court for admission in evidence of a letter, referred

[1] It was determined shortly thereafter that the defendant was not involved in the reported armed robbery.

[2] The defendant's conviction of unlawful possession of ammunition was placed on file with his consent.

to in supporting affidavits, sent to the defendant from his plea counsel and advising the defendant that there was no persuasive basis on which to appeal from the denial of his suppression motion. After receiving that letter in evidence, the judge again denied the defendant's motion without a hearing. We have considered the defendant's appeal from the order of denial in light of the letter from his plea counsel (now part of the record), affidavits submitted by the defendant, by his plea counsel, and by his appellate counsel, original and supplemental briefs submitted by the parties, and both oral arguments. We now affirm the order of denial.

We summarize the findings of fact made by the judge who denied the defendant's motion to suppress. At approximately 11:13 P.M. on June 4, 1991, a woman made a telephone call to the recorded dispatch line of the Boston police department to report a robbery that had just taken place at the corner of Mozart and Chestnut Streets in the Jamaica Plain section of Boston. The woman, who gave her name as "Jean," stated that the robbery victim was a friend of her husband. She described the assailants as "two black guys" and indicated that one of them had a gun. The dispatch officer transmitted this information to police officers on duty in the vicinity. Within minutes, two MDC officers who had received the report observed a black male "furiously pedaling" a "mountain bike" approximately one block from where the robbery had occurred. The officers were suspicious and, pulling their marked police cruiser next to the man on the bicycle (the defendant), requested that he stop. The defendant did not respond but looked straight ahead and kept pedaling. The officers pulled their cruiser in front of the defendant, and one officer got out and stopped the defendant. The defendant stated, "I didn't do it — leave me alone." The officer grabbed the defendant's arm and said that he just wanted to ask him a few questions. Fearful for his safety because the reported robbery involved a gun, the officer quickly patted down the defendant and discovered a loaded .32 caliber handgun on his person. Without being asked any questions, the defendant blurted out, "some dude gave me that gun." The officer gave the defendant his Miranda rights and then asked, "What dude gave you the gun?" The defendant responded that "some dude"

to whom he owed money gave him the gun. The defendant was arrested for possession of the handgun and ammunition.

Based on the facts set forth above, the judge concluded that the officers were justified in making a threshold inquiry of the defendant. The judge reasoned that the information known to the police officers "via the police radio, the time of night, and the observed actions of the police collectively" provided them with reasonable suspicion that justified their investigatory stop of the defendant. In addition, the judge ruled that the protective pat-down of the defendant at the outset of the stop was "perfectly reasonable" based on information that the robbery precipitating the stop was committed with a handgun. The judge identified two decisions in which this court had concluded there was no reasonable suspicion justifying a police stop. The judge first distinguished *Commonwealth* v. *Antobenedetto*, 366 Mass. 51 (1974), on the basis that the facts of that case involved a warrantless stop and search of an automobile based on information in a police broadcast that was unsupported by probable cause. See *id.* at 56 & n.2. The judge then discussed *Commonwealth* v. *Thibeau*, 384 Mass. 762 (1981), in which a defendant riding a bicycle made a sudden turn and pedaled down a side street after seeing a marked police cruiser. The judge reasoned that the police stop of the bicyclist in the *Thibeau* case was unlawful because the police had no basis whatsoever to conduct an investigatory stop of the bicyclist. The judge stated that the stop of the defendant "was not based on mere suspicion, but reasonably reliable information provided to the police." The judge further concluded that the defendant's initial statement to the officers was voluntarily made without interrogation and that his remaining statements were made after he was properly warned of his Miranda rights. Accordingly, the judge denied the defendant's motion to suppress the handgun, the ammunition, and his statements to police.

The following week, the defendant's plea counsel advised him in a letter that there was no basis on which to appeal from the judge's ruling. The defendant's plea counsel informed him that the judge had "carefully crafted the facts so his legal finding is indisputable." He stated that: "No appellate court will change his findings of fact. And, based on his findings of fact,

his legal conclusion is correct. . . . We have nothing to try in this case. They have you absolutely cold." Two months later, the defendant pleaded guilty to the charges. No record of the pleas now exist.

A judge may grant a motion for a new trial only "if it appears that justice may not have been done." *Commonwealth* v. *Fanelli*, 412 Mass. 497, 504 (1992), quoting *Commonwealth* v. *DeMarco*, 387 Mass. 481, 482 (1982), and cases cited. When, as here, the motion includes a postsentence request to withdraw a guilty plea and the motion is filed after plea records have been destroyed, a new trial motion should be granted only "if the defendant comes forward with a credible reason which outweighs the risk of prejudice to the Commonwealth." *Commonwealth* v. *Fanelli, supra,* quoting *Commonwealth* v. *DeMarco, supra* at 486. The defendant argues that the judge's ruling was clearly erroneous and that his plea counsel's failure to appreciate the merits of a possible appeal constituted ineffective assistance of counsel. The Commonwealth asserts, correctly, that by failing to raise this issue in his first pro se rule 30 motion, the defendant has waived it. Waiver in this case also may be based on the defendant's failure to appeal from the denial of his first motion for a new trial. See *Mains* v. *Commonwealth*, 433 Mass. 30, 34 (2000). That the defendant proceeded pro se does not affect his obligation to abide by procedural rules. See *id.* at 36. We therefore review any error to determine whether it may have created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Russell*, 439 Mass. 340, 345 (2003).

A defendant whose plea counsel gives plainly incorrect advice, and who relies on that advice in tendering a guilty plea, has received ineffective assistance of counsel under the familiar standard set forth in *Commonwealth* v. *Saferian*, 366 Mass. 89 (1974), whether there has been "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer [that] has likely deprived the defendant of an otherwise available, substantial ground of defence." *Id.* at 96. In such a case, there could be no certainty that a defendant's decision to waive his right to a jury trial by entering pleas of guilty was made intelligently or voluntarily, with a

full understanding of the consequences. See *Kercheval* v. *United States*, 274 U.S. 220, 223 (1927); *Commonwealth* v. *Lopez*, 426 Mass. 657, 660 (1998). That constitutional infirmity would create a substantial risk of a miscarriage of justice and justify our granting the defendant's request to withdraw his pleas. See *Commonwealth* v. *Nikas*, 431 Mass. 453, 459-460 (2000). See also *Commonwealth* v. *Mahar*, 442 Mass. 11, 13-14 n.4 (2004). The determinative question is whether the defendant's plea counsel rendered constitutionally ineffective assistance of counsel when, in 1991, he advised the defendant that there was no basis on which to appeal from the judge's denial of his suppression motion. We conclude that he did not.

Based on principles originally stated in *Terry* v. *Ohio*, 392 U.S. 1 (1968), and fully developed thereafter in our case law, it is doubtful that evidence presented by the Commonwealth at the suppression hearing sufficiently proved that the stop of the defendant was lawful. Where a defendant files a pretrial motion to suppress evidence seized during a *Terry*-type stop, as occurred here, the Commonwealth bears the burden to prove that the police had reasonable suspicion, before initiating the stop, that "a person has committed, is committing or about to commit a crime." *Commonwealth* v. *Comita*, 441 Mass. 86, 91 (2004), quoting *Commonwealth* v. *Watson*, 430 Mass. 725, 729 (2000). Reasonable suspicion, in turn, must be "based on specific, articulable facts and reasonable inferences therefrom." *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990), quoting *Commonwealth* v. *Wren*, 391 Mass. 705, 707 (1984). Where police conduct an investigatory stop based on information gleaned from an anonymous tip, courts assess the sufficiency of the information in terms of the reliability of the informant and his or her basis of knowledge. See *Commonwealth* v. *Lyons*, *supra* at 20-22. Where the information relied on to establish reasonable suspicion is transmitted by radio bulletin, both the source of the information and the basis of the source's knowledge must be demonstrated to be reliable. See *Commonwealth* v. *Cheek*, 413 Mass. 492, 494-497 (1992). Here, a woman who gave her name as "Jean" told a police dispatcher that a friend of her husband had just been robbed at gunpoint. She described the assailants by their race and nothing more.

She did not indicate what type of clothing they wore, in what direction they had fled, or their mode of transportation. When the police first sighted the defendant, all they knew of him was that he was black and that he was "furiously pedaling" a bicycle one block from the reported robbery. The defendant's plea counsel argued at the hearing on the motion to suppress that there was nothing inherently suspicious about the defendant's behavior that would have warranted a reasonable inference that he was involved in criminal activity. In retrospect, we agree.

Given the state of law in the Commonwealth in 1991, however, the defendant's plea counsel's advice that, based on the judge's findings, an appeal would not be successful, was not patently wrong. The primary cases on which the defendant now relies to show legal error in the judge's ruling, *Commonwealth v. Barros*, 435 Mass. 171, 172 (2001); *Commonwealth v. Cheek*, *supra*; and *Commonwealth v. Berment*, 39 Mass. App. Ct. 522, 526 (1995), were decided *after* the challenged advice was tendered and, thus, could not have provided guidance to the defendant's plea counsel. In the five years preceding the defendant's guilty plea, the Appeals Court vacated only two orders denying motions to suppress based on *Terry*-type stops. See *Commonwealth v. Carrasquillo*, 30 Mass. App. Ct. 783, 787 (1991) (order denying motion to suppress vacated); *Commonwealth v. O'Laughlin*, 25 Mass. App. Ct. 998, 999 (1988) (same). Contrast *Commonwealth v. Dise*, 31 Mass. App. Ct. 701, 703 (1991) (denial of motion to suppress affirmed); *Commonwealth v. Patti*, 31 Mass. App. Ct. 440, 441-443 (1991) (same); *Commonwealth v. Hurd*, 29 Mass. App. Ct. 929, 930 (1990) (same); *Commonwealth v. Cardaleen*, 26 Mass. App. Ct. 979, 981 (1988) (same); *Commonwealth v. Modica*, 24 Mass. App. Ct. 334, 338-339 (1987) (same); *Commonwealth v. Reed*, 23 Mass. App. Ct. 294, 296 (1986) (same); *Commonwealth v. Montgomery*, 23 Mass. App. Ct. 909, 910 (1986) (same).[3] Further, neither Appeals Court decision reversing suppression

---

[3]Moreover, during the same period, the Appeals Court affirmed only one such suppression order and reversed all other such suppression orders it reviewed. See *Commonwealth v. Gutierrez*, 26 Mass. App. Ct. 42, 45 (1988) (suppression order affirmed). Contrast *Commonwealth v. Tompert*, 27 Mass. App. Ct. 804, 809 (1989) (suppression order reversed); *Commonwealth v.*

motions presented facts similar to this case. In the first, *Commonwealth* v. *O'Laughlin, supra,* police officers stopped one of the last passengers off a shuttle flight from New York to Boston based on their observations that he walked rapidly and carried only a cloth jacket. See *id.* at 998. The second, *Commonwealth* v. *Carrasquillo, supra,* concerned an informant's uncorroborated tip that the defendant had gone to New York City and would return transporting cocaine and accompanied by a Hispanic man with a beard. The Appeals Court concluded that, without evidence indicating either the reliability or the basis of knowledge of the informant's information, the informant's tip alone could not give rise to a reasonable suspicion that the defendant had committed, or was committing, a crime. See *id.* at 786-787.

This court appears to have been even more deferential. In the five years before the challenged advice was given, we reversed only one order denying a motion to suppress evidence seized during a *Terry*-type stop. See *Commonwealth* v. *Lyons,* 409 Mass. 16, 20-22 (1990). Contrast *Commonwealth* v. *Fraser,* 410 Mass. 541, 543 (1991) (order denying motion to suppress affirmed); *Commonwealth* v. *Moses,* 408 Mass. 136, 140 (1990) (same); *Commonwealth* v. *Sanchez,* 403 Mass. 640, 645-646 (1988) (same); *Commonwealth* v. *Andrews,* 403 Mass. 441, 460 (1988) (same); *Commonwealth* v. *Tomeo,* 400 Mass. 23, 25 (1987) (same). See also *Commonwealth* v. *Ferguson,* 410 Mass. 611, 615 (1991) (conviction reversed; evidence and statement should have been suppressed on other grounds than *Terry* stop); *Commonwealth* v. *Helme,* 399 Mass. 298, 299-300 (1987) (order allowing motion to suppress affirmed). In *Commonwealth* v. *Lyons, supra,* a State trooper stopped the defendant's automobile based on an anonymous caller's tip that two white men, one named Wayne, had just purchased narcotics in Chelsea and would be heading for Maine in a silver Hyundai automobile with Maine registration 440-44T. Because the anonymous tip provided no information regarding the basis of the tipster's

*Pimentel,* 27 Mass. App. Ct. 557, 558 (1989) (same); *Commonwealth* v. *Ciaramitaro,* 26 Mass. App. Ct. 110, 115 (1988) (same); *Commonwealth* v. *Blake,* 23 Mass. App. Ct. 456, 461 (1987) (same); *Commonwealth* v. *Fitzgibbons,* 23 Mass. App. Ct. 301, 302 (1986) (same).

knowledge or his reliability, and because the defendants displayed no suspicious behavior whatsoever, this court concluded that the police did not have reasonable suspicion to stop the defendants. *Id.* at 20, 22.

Given, however, that both this court and the Appeals Court were consistently deferential toward judges' decisions with respect to the conduct of police officers in reviewing motions to suppress evidence seized in *Terry*-type stop situations, the advice given to the defendant by his plea counsel in 1991, that an appeal would be futile, was not totally misinformed or, at least, did not reflect the level of serious incompetence required to demonstrate constitutionally substandard legal assistance. We conclude that the advice fell within the range of reasonable competence demanded of attorneys in criminal cases at that time.[4] Subsequent legal developments cannot be used to alter present final decisions except in extreme circumstances not existing here; otherwise finality has no meaning.

Also of significance to our decision is the lack of any credible evidence that the defendant relied on the advice in the letter when he pleaded guilty. In fact, the defendant claimed in his pro se motion for a new trial that his plea decision was based on his attorney's advice that he would receive "less time" and did not even mention his attorney's advice regarding a potential appeal. Moreover, the letter containing the advice was dated October 26, 1991, and the guilty pleas were entered on January 7, 1992. Presumably, there were other communications between the defendant and his counsel regarding the merits of pleading guilty versus going to trial during that intervening time period, but the defendant offers no plausible evidence as to the content of these communications. Finally, there were other obvious benefits of the pleas. Sentencing documents in the record

---

[4]We reject the defendant's claim that his pleas were invalid because he was not informed by the Superior Court judge who accepted his pleas, or by his plea attorney, that he would receive a minimum mandatory sentence of five years. This claim is a variation of that asserted (and rejected) in his pro se motion for a new trial. There is no plausible evidence in the record that the defendant was ignorant of the consequences of a conviction of the offenses to which he pleaded guilty. It is also worth noting that the premise on which this claim is based, the defendant's representation that he was not eligible for parole while serving the five year sentence, is clearly contradicted by the Department of Correction's "administrative chronology" in the record.

indicate that a portion of the defendant's term of imprisonment was served concurrently with another then being served, and that the sentence originally was to be served at MCI, Concord. Considering that the defendant served his sentence in full before filing his motion for postconviction relief, we conclude that the judge did not abuse his discretion in this matter. See *Commonwealth* v. *Lopez*, 426 Mass. 657, 661-663 (1998) (judge not required to accept defendant's "self-serving affidavit, alleging constitutional defects in conclusory terms" as sufficient to satisfy burden under rule 30 [b]). The order denying the defendant's motion for a new trial is affirmed.

*So ordered.*