Agnes, Peter W., J.
Introduction
The defendant is charged with Trafficking in Heroin, a Class A Controlled Substance and Possession with Intent to Distribute Cocaine, a Class B Controlled Substance. He has filed a pretrial motion to suppress evidence seized by the Peabody Police Department as a result of a warrantless search. Based on the credible evidence presented at the hearing on the defendant’s motion, I make the following findings of fact and rulings of law.
Findings of Fact
On July 7, 2005, Peabody Police Officer Gerald Fitzgerald, a ten-year veteran, was on duty assigned to the central Peabody area and working the 4:00 p.m. to 12:00 a.m. shift. His assignment included the North Shore Mall which was an area where he and others had made numerous arrests for automobile thefts. He received a dispatch from police headquarters to respond to the North Shore Mall Food Court. There he met an unidentified woman who reported seeing a “strange man” riding on a bicycle and “looking through cars” in the parking lot outside the food court. Officer Fitzgerald proceeded to the area of the parking lot described by the unidentified woman. It was still light outside when he arrived at the area in question. He did not see a person on a bicycle, but he did see a man walking beside a row of parked cars whom the officer observed looking inside a vehicle with open windows. Officer Fitzgerald was about 25-30 feet away when he made the observation. The individual continued walking until he arrived at a parked vehicle with the engine running. There, the suspect entered the passenger seat. As the vehicle drove off, the driver made eye contact with Officer Fitzgerald. Officer Fitzgerald proceeded to follow this vehicle, which speeded up.
Officer Fitzgerald activated his flashing lights and stopped the vehicle. He approached the driver’s side of the vehicle. He asked the driver for his license and registration. The driver could not produce either and tried to get out of the vehicle. Meanwhile, the defendant remained seated with his hands between his legs and reaching down to the floor. When asked what he was doing, the defendant did not reply. Officer Fitzgerald instructed the defendant to exit the vehicle and walk over to his cruiser. As the defendant complied, Officer Fitzgerald observed him reach into his pocket and drop a clear plastic baggie to the ground. Officer Fitzgerald ordered the defendant to the ground and called for backup. At the same time, he saw the driver reach under the seat and the defendant “digging” in his pants. Officer Fitzgerald responded to these developments by pulling out his revolver and ordering the driver and the defendant to freeze. Additional officers arrived about one minute later. Additional quantities of drugs and United States currency in the amount of $430 were found on the defendant.
3. Rulings of Law
The Commonwealth and the defendant agree that the sole issue is whether Officer Fitzgerald was justified when he stopped the vehicle in which the defendant was riding after observing him walking through the parking area. The question is whether the officer acted on the basis of a hunch or whether he had reasonable grounds to believe a crime was being or was about to be committed. “[A] police officer may stop an individual and conduct a threshold inquiry if the officer reasonably suspects that such individual has committed, is committing, or is about to commit a crime. To qualify as reasonable, the officer’s suspicion must be based on specific, articulable facts and reasonable inferences drawn therefrom. The standard is objective: would the facts available to the officer at the moment of the seizure or the search warrant a [person) of reasonable caution in the belief that the action taken was appropriate?” Commonwealth v. Mercado, 422 Mass. 367, 369 (1996) (citations and quotations omitted). Accord, Terry v. Ohio, 392 U.S. 1, 30 (1968). The burden of proving that there was an objectively reasonable basis for the belief that criminal activity was planned or underway rests with the Commonwealth. See Brown v. Texas, 443 U.S. 47, 52 (1979); Commonwealth v. Phillips, 413 Mass. 50, 55 (1992).
Where police conduct an investigatory stop based on information gleaned from an anonymous tip, courts assess the sufficiency of the information in terms of the reliability of the informant and his or her basis of knowledge. Commonwealth v. Walker, 443 Mass. 867, 872 (2005). In Walker, police acted based on information received from an unidentified woman that a friend of her husband’s was just robbed at gunpoint by two black men. A few minutes later, police officers observed *250 the defendant — a black man — "furiously pedaling" his bicycle about one block away from the scene of the alleged crime. They pulled alongside the defendant and requested him to stop. When he ignored them and continued pedaling, officers stopped and frisked him. The Appeals Court, affirming suppression of the evidence obtained during the frisk, ruled that police lacked reasonable suspicion before initiating the investigatory search. An unidentified informant did not provide detailed description of the robbers, did not mention a bicycle, and nothing in behavior of the individual stopped was inherently suspicious or warranted an inference that he was involved in criminal activity. See United States v. Montiero, No. 05-2283 (1st Cir. 2006) (explaining that in the absence of any evidence corroborating the reliability of a tip from an unidentified informant about a person’s involvement in criminal activity the mere fact that the suspect was thought to be a member of a violent gang who had been involved in criminal activity in the past was not sufficient to justify a stop).
Similarly, in the case at bar, the officer’s actions were based on the tip provided by an unidentified woman. The only description she provided was that of a “strange man riding a bicycle.” That description, as in Walker, lacked any detail and the detail that was mentioned — a bicycle — did not match the individual later observed and stopped by the officer: Mr. Santos was not observed riding a bicycle and the officer did not identify any unusual features of Mr. Santos’s appearance that would cause him to be described as “strange.” Contrast United States v. Jones, 432 F.3d 34, 40-41 (1st Cir. 2005). There was nothing inherently suspicious in the defendant’s behavior here. He was observed walking through the mail’s parking lot during the mail’s business hours, briefly looking into a car that happened to have its windows open, and finally, leaving the area after joining his companion. In fact, there was even less basis for suspicion in this case than in Walker. The informant in Walker, at least, reported a robbery — criminal activity. In this case, the informant did not observe any criminal activity — the “strange” man on a bicycle was not reported to have done anything illegal.
The facts in this case are also similar to the facts in Commonwealth v. Clark, 65 Mass.App.Ct. 39 (2005), where the defendant was observed by the police officer exchanging a small package for cash in an area known for high drug activity. The Clark Court held that the officer had an insufficient basis for an investigatoiy stop because he had no information that a drug sale was supposed to occur at that particular location at the time and the defendant was not known to the police to be a drug dealer or user. Similarly, while Mr. Santos was observed looking through an open car window at the area known for thefts from automobiles, his actions were no more significant than exchanging something in a high crime area in Clark.
An additional observation should be made about two of the factors that are part of the calculus relied upon by the Commonwealth. First, with respect to the element of the officer’s training and experience, this may be a significant in determining the existence of reasonable suspicion or probable cause when it is applied to facts and leads to an inference of criminal activity that “might well elude an untrained person.” United States v. Arvizu, 534 U.S. 266, 273 (2002). A good example of this is when a trained police officer identifies an odor as indicative of contraband. See, e.g., Commonwealth v. Lawrence L., 439 Mass. 817, 823 (2003). See also Commonwealth v. Stark, 49 Mass.App.Ct. 227, 234-35 (2000) (police officer permitted to apply training and experience to associate a bulge in a person’s waist band with presence of a weapon). But an officer’s training and experience must be applied to specific and articulable facts in such a way that the average reasonably prudent person understands why the facts are indicative of criminal activity. Otherwise, this factor becomes a talisman that “would effectively transform the police officer into a judge, and the court into a rubber stamp.” Rivera v. Murphy, 979 F.2d 259, 264 (1st Cir. 1992). Second, the fact that an incident occurs in a neighborhood in which many arrests have been made or in which many reports have been made to the police about criminal activity may be a significant factor that contributes to the existence of reasonable suspicion or probable cause. However, a crime-infested neighborhood, no more than an officer’s experience and training, is not a proxy for specific and articulable facts that give rise to reasonable suspicion of criminal activity. See United States v. McCoy, 402 F.Sup.2d 311, 319 & n.11 (D.Mass.), affirmed, 428 F.3d 38 (1st Cir. 2005). See also Commonwealth v. Cheek, 419 Mass. 492, 496 (1992) (“that the area where the police observed the defendant was a ‘high crime area’ is not persuasive. This factor contributes nothing to the officers’ ability to distinguish the defendant from any other black male in the Grove Hall section of Roxbury. There was no suspicious activity of the defendant observed by the police.”).
Under these circumstances, the police officer lacked reasonable suspicion necessary to stop the car in which the defendant, Mr. Santos, was leaving the Mall area.[1] Because all of the physical evidence and statements obtained by the police derive from an unconstitutional stop of the motor vehicle, the defendant’s motion is allowed.
ORDER
For the above reasons, the defendant’s motion to suppress is ALLOWED.

The Court does not suggest that the police should be prevented from pursuing an investigation based on intuition or a hunch. However, the Massachusetts Constitution demands that police officers confine themselves to continued surveillance in such cases until such time when the investigation reveals facts sufficient to form reasonable suspicion for an investigatoiy stop. See, e.g., Commonwealth v. Albert, 51 Mass.App.Ct. 377, 380 (2001).