## Commonwealth vs. Fabian F., a juvenile.

No. 11-P-1705.

Suffolk. May 3, 2012. - March 6, 2013.

Present: Wolohojian, Smith, & Agnes, JJ.[1]

*Delinquent Child. Constitutional Law,* Assistance of counsel. *Practice, Criminal,* Assistance of counsel, Juvenile delinquency proceeding, "Two tier" court system. *Juvenile Court,* Delinquent child.

Trial counsel for a juvenile was not ineffective for not claiming (at a time when the two-tiered juvenile trial system still existed) a de novo jury trial after a bench trial in which the juvenile had been adjudicated delinquent for rape of a child with force, where there was nothing in the circumstances of the case to suggest that forgoing a de novo jury trial was anything other than objectively reasonable, and where the juvenile could not demonstrate that better work might have accomplished something material for the defense. [398-399]

Complaint received and sworn to in the Suffolk County Division of the Juvenile Court Department on November 30, 1987.

A motion for a new trial, filed on March 9, 2010, was heard by *Leslie E. Harris,* J.

*John P. Zanini,* Assistant District Attorney, for the Commonwealth.

*Lois J. Martin* for the juvenile.

Wolohojian, J. At issue is whether trial counsel was necessarily ineffective in 1988 (when the two-tiered juvenile trial system still existed[2]) for not claiming a de novo jury trial after a bench

---

[1]This case was argued before Justices Wolohojian, Smith, and Agnes. Following the death of Justice Smith, Justice Cohen was added to the panel and participated in this decision.

[2]If a juvenile was adjudicated delinquent in a bench trial, he had the right to a de novo jury trial. The two-tier trial system remained in effect for juveniles charged with delinquency until 1996. This system was replaced by a single jury trial. G. L. c. 119, § 56, as amended through St. 1996, c. 200, § 4. See Ireland, Juvenile Law § 1.52 (2006).

trial in which the juvenile had been adjudicated delinquent for rape of a child with force, G. L. c. 265, § 22A. Ruling on a motion for new trial filed twenty-two years later, a Juvenile Court judge concluded that the failure to claim a de novo trial, without more, constituted a form of per se ineffective assistance of counsel and allowed the juvenile's motion. Mass.R.Crim.P. 30(c)(8), as appearing in 435 Mass. 1501 (2001). We reverse because the fact that a de novo jury trial was not pursued does not, in and of itself, establish constitutionally ineffective assistance of counsel.

*Background.* The two year old victim's mother, responding to the sound of the victim crying, saw the thirteen year old juvenile on top of the victim, naked from the waist down and with his penis inside of the victim's vagina. When confronted and asked what he was doing, the juvenile put his penis back into his shorts and said that he was looking out the window. The victim was taken to Boston Children's Hospital, where a doctor concluded that she had been "penetrated sexually." There was redness in her vaginal area, and an acid phosphate test demonstrated the presence of seminal fluid.[3]

The juvenile was charged with forcible rape of a child. Unrelatedly, the juvenile also was charged with breaking and entering in the daytime with the intent to commit a felony, G. L. c. 266, § 18, and malicious destruction of property, G. L. c. 266, § 127. All three of these delinquency complaints came before a Juvenile Court judge on February 16, 1988.[4] The juvenile tendered a plea admitting to sufficient facts with respect to the two property crimes. After a bench trial that same day, the juvenile was adjudicated delinquent on the rape charge.[5] The judge imposed the same sentence for all three charges: commit-

---

[3] See *Commonwealth* v. *Willie*, 400 Mass. 427, 428 n.1 (1987) (acid phosphate test determines whether seminal fluid is present).

[4] The judge was Justice Roderick Ireland, now Chief Justice of the Supreme Judicial Court.

[5] Given the passage of time, there is no trial transcript available and the record is scant. However, the docket reflects that trial subpoenas were issued to the victim's mother, two police officers, and Boston Children's Hospital. The record also contains a police report and an investigative report from the Boston Police sexual assault investigative unit. Affidavits from the juvenile

ment to the custody of the Department of Youth Services (DYS) until age eighteen.[6] The juvenile did not claim a de novo jury trial on the rape charge.

Twenty-two years later, in March, 2010, prompted by the collateral consequences of the delinquency finding on the rape charge,[7] the juvenile moved for a new trial. He argued that his trial counsel had been ineffective because (a) counsel did not consult with the juvenile; (b) counsel did not advise the juvenile that a trial was occurring, a fact the juvenile did not understand until after his commitment; and (c) counsel did not claim a de novo jury trial, nor did he advise the juvenile that he had a right to a de novo trial. The motion was accompanied by affidavits from the juvenile and his "grandmother."[8] There was no affidavit from trial counsel.[9] The Commonwealth's opposition included a letter from the trial judge stating that he had no recollection of the case but that "as a judge in the Juvenile

and the victim's mother submitted in connection with his motion for new trial confirm that the mother testified at trial.

The Commonwealth submitted an impounded appendix of documents from the juvenile's Department of Youth Services (DYS) commitment extension proceedings, which reflect that the juvenile admitted to the crime, but these documents were not before the motion judge below. Consequently, they are not part of the record on appeal, and we do not consider them. Mass.R.A.P. 8(a), as amended, 378 Mass. 932 (1979). *Brennan* v. *The Governor*, 405 Mass. 390, 399 n.5 (1989).

[6]The juvenile's commitment was later extended to age twenty-one on motion by DYS.

[7]The juvenile identified these collateral consequences as being subject to the requirements of the sex offender registration statute, G. L. c. 6, §§ 178C-178Q; being subject to the requirement that he provide deoxyribonucleic acid (DNA), G. L. c. 22E, § 3; being subject to civil commitment as a sexually dangerous person, G. L. c. 123A, §§ 1-15; and being subject to lifetime community parole under G. L. c. 265, § 45, and G. L. c. 275, § 18.

[8]Quotation marks are used here because the affiant used this convention herself in her affidavit, thus suggesting that her relationship to the juvenile was like that of a grandmother rather than being his biological grandmother. The "grandmother's" affidavit states that she examined the victim immediately after the incident and saw no evidence of rape.

[9]The docket sheet reflects that the juvenile was represented by an attorney named "Rosencrantz." Investigation by motion counsel for the juvenile suggests that trial counsel may have been one Dana Rosencranz (note the slightly different spelling of the surname). Regardless, there was no affidavit from any attorney who acknowledged being trial counsel for the juvenile.

Court Department, I endeavored to comply with the requirements of the law in all respects."

After hearing argument, but without holding an evidentiary hearing or making any written findings or rulings, the motion judge, who was not the trial judge, allowed the motion for new trial. The Commonwealth moved to vacate that order on the ground that it had discovered new information: a cousin of the juvenile stated that she had testified against him at trial and that the juvenile's mother, as well as other relatives, had been present.[10] The Commonwealth also sought an evidentiary hearing. The Commonwealth's motion to vacate was allowed, and the judge ordered the Commonwealth to identify the witnesses it would present at an evidentiary hearing.[11] After at least one additional nonevidentiary hearing, the juvenile's motion for new trial was again allowed.[12] The judge explained his reasons:

> "I feel that any lawyer who did not go [d]e [n]ovo on a charge like this was ineffective. You have an absolute right to have a trial on this matter before a jury. And I find it ineffective assistance of counsel, that the lawyer did not exercise that right on such a serious charge. . . . I find it to be ineffective assistance of counsel, to not exercise de novo on the rape charge. . . . That's my only reason. That's the only thing I have evidence of. Everything else, well if we had a hearing the only evidence I have is that

[10]This information bore on the juvenile's claim that his family had not been present during the trial.

[11]In compliance with the order, the Commonwealth identified Chief Justice Ireland, a probation officer, the juvenile's cousin, the juvenile's "grandmother," the court clerk, and the two attorneys who did not remember being trial counsel.

[12]The Commonwealth's notice of appeal purports to appeal from the (a) order of February 2, 2011, allowing the juvenile's motion for new trial; (b) order of March 21, 2011, allowing the Commonwealth's motion to vacate the February 2 order; and (c) order of May 2, 2011, allowing the juvenile's motion for new trial. However, the notice of appeal was not filed until May 2, 2011, and, therefore, was timely only with respect to the May 2, 2011, order. See Mass.R.A.P. 4(b), as amended, 431 Mass. 1601 (2000). The Commonwealth's appeal from the first two orders is not properly before us. In any event, we need not reach any substantive issues on the prior orders because we are vacating the May 2 order for new trial, and because the defendant did not appeal from the ruling on his claim that the court room at the time of trial was not cleared (see note 10, *supra*).

he was never, the right to [d]e [n]ovo was never exercised. . . . The only ruling I'm making is ineffective assistance of counsel, for not exercising his right to [d]e [n]ovo."

*Discussion.* The judge accepted the juvenile's argument that counsel's failure to claim a de novo jury trial in a rape case necessarily meant that the juvenile had not received effective assistance of counsel.[13] The judge erred by not examining the totality of the circumstances. "[W]hat is required in the actual process of decision of claims of ineffective assistance of counsel, and what our own decisions have sought to afford, is a *discerning examination and appraisal of the specific circumstances of the given case* to see whether there has been serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence" (emphasis supplied). *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). Accord *Roe* v. *Flores-Ortega*, 528 U.S. 470, 478-479 (2000) (there is no per se rule of constitutionally ineffective assistance of counsel, even when counsel has failed to file a notice of appeal without consulting his client; reasonableness of counsel's conduct must be judged on the facts of the particular case, viewed as of the time of counsel's conduct). "This standard for determining whether there has been ineffective assistance of counsel is the same for both adult criminal trials and juvenile proceedings." *Commonwealth* v. *Ogden O.*, 448 Mass. 798, 806 (2007), citing *Commonwealth* v. *Ike I.*, 53 Mass. App. Ct. 907, 908 (2002).

---

[13]The juvenile argued that there had been a practice of "automatically" exercising the right to a de novo jury trial in all cases. However, the record did not support this global assertion. At best, it contained an affidavit from Attorney White (who had not represented the juvenile) that it was his customary practice to claim a de novo jury trial in all his cases. In any event, it is evident that the judge did not rely on the White affidavit as a basis for allowing the motion, nor could he have done so. See *Commonwealth* v. *Gordon*, 82 Mass. App. Ct. 389, 394-395 (2012) (motion for new trial cannot properly be allowed based upon crediting the defendant's factual submissions where the Commonwealth disputes the facts and the issue is not one purely of law).

As noted above, we look to the entire set of circumstances confronted by the juvenile's counsel in order to determine whether his performance fell below that required of an ordinary fallible lawyer. Those circumstances were as follows. The juvenile was caught in flagrante delicto. The victim's mother observed the partially clothed juvenile in the act of raping her two year old daughter. The juvenile's false explanation when questioned weakened the defense. A medical examination immediately after the crime confirmed the rape. There is no benign explanation for the presence of seminal fluid in the vaginal area of a two year old girl. The trial judge was an expert in juvenile law, well respected, and known for his thoughtful decision-making. It is of special importance to note that the juvenile has not argued — let alone shown — that there is any reason to think that a jury would have taken a different view of the facts than did the trial judge or that a jury would have reached a different conclusion. Moreover, the judge's sentence did not increase the commitment the juvenile had already received in connection with the two property crimes to which he pleaded guilty. And because the collateral consequences from a sex offense conviction that now exist (see note 7, *supra*) did not exist at the time, there was no practical benefit to the juvenile from being retried. See *Commonwealth* v. *Walker*, 443 Mass. 867, 873, cert. denied, 546 U.S. 1021 (2005) (we consider counsel's conduct in light of the law at the time of trial). Counsel may also have considered that a de novo jury trial would not serve his client's best interests: the psychological and emotional stress on the young juvenile could be significant, and treatment from DYS could be delayed until the second trial concluded.

In short, there is nothing to suggest that forgoing a de novo jury trial was anything other than objectively reasonable. Nor, given the above circumstances, can the juvenile demonstrate that "better work might have accomplished something material for the defense." *Commonwealth* v. *Ogden O.*, *supra* at 806, quoting from *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). See *Commonwealth* v. *Clarke*, 460 Mass. 30, 49 (2011) (defendant has the burden of showing that but for counsel's failure "there is a reasonable probability that the outcome of the proceeding would have been different").

The juvenile also argues that counsel was ineffective because he did not advise him of his right to a de novo jury trial. The juvenile's assertion that trial counsel never consulted with him regarding an appeal apparently was not credited by the motion judge, who made no finding to that effect.[14] See *Commonwealth* v. *Murphy*, 442 Mass. 485, 507 (2004) (judge has discretion to discredit the defendant's unsubstantiated and unopposed affidavit). More fundamentally, the judge could not have allowed the motion based on that affidavit without conducting an evidentiary hearing, which he declined to do. *Commonwealth* v. *Gordon*, 82 Mass. App. Ct. 389, 394-395 (2012). However, even were we to accept the juvenile's assertion, his claim would not succeed because his affidavit does not state that he would have opted for a de novo jury trial had his counsel advised him of the option. See *Commonwealth* v. *Clarke*, *supra* at 49 (no prejudice where the defendant failed to allege that he would have opted to go to trial had he been advised by counsel of the immigration consequences of his plea).

The May 2, 2011, order allowing the motion for a new trial is reversed.

*So ordered.*

---

[14]In fact, the juvenile's assertion is at least partially undercut by the docket, which reflects that he was advised at arraignment that he had a right to a jury trial in the first instance.