COMMONWEALTH *vs.* COREY D. CLARK.

No. 04-P-1723.

Worcester. September 14, 2005. - November 2, 2005.

Present: GRASSO, GREEN, & GRAHAM, JJ.

*Constitutional Law,* Search and seizure. *Search and Seizure,* Motor vehicle, Threshold police inquiry, Reasonable suspicion. *Practice, Criminal,* Motion to suppress. *Controlled Substances. Firearms.*

A judge of the Superior Court properly ordered the suppression of evidence seized by police in the course of a stop and warrantless search of the criminal defendant's motor vehicle, where the police did not have a legally sufficient basis for stopping the defendant's vehicle, but rather acted on a mere hunch without any reason to suspect that criminal activity was afoot. [43-45]

INDICTMENTS found and returned in the Superior Court Department on October 10, 2003.

A pretrial motion to suppress evidence was heard by *John S. McCann,* J.

An application for leave to prosecute an interlocutory appeal was by *Robert J. Cordy,* J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to the Appeals Court.

*Ellyn H. Lazar-Moore,* Assistant District Attorney, for the Commonwealth.

*Brian J. Buckley* for the defendant.

GRAHAM, J. After a hearing, a judge of the Superior Court ordered the suppression of certain evidence (drugs and a gun) seized by police in the course of a stop and warrantless search of the defendant's automobile. The judge determined the police had acted on a hunch, and not with reasonable suspicion, when they decided to stop the defendant's automobile.

On appeal, the Commonwealth contends that the judge's

findings were clearly erroneous and that, even accepting those findings, his order allowing the defendant's motion to suppress was erroneous. We affirm the judge's ruling.

*Facts.* We summarize the relevant facts found by the judge, which we supplement with uncontroverted testimony from the suppression hearing. See *Commonwealth* v. *Ciaramitaro,* 51 Mass. App. Ct. 638, 639 (2001).

At approximately 11:20 P.M. on August 5, 2003, a Worcester police officer, Mark Bisnette, heading westbound in a marked police cruiser on Grafton Street, a busy Worcester thruway, approached the intersection of Penn and Waverly Streets, which both enter onto Grafton Street. A bar — the French Connection — is located on a triangular piece of land between Waverly and Grafton Streets, at the intersection with Penn Street.[1] As of the date of the suppression hearing (June 24, 2004), Officer Bisnette had been on the Worcester police force for about eight and one-half years. During his tenure as a police officer he had been involved in at least one hundred drug-related arrests. The area where he was driving was known to him as a "high crime, high drug area."

While driving past the French Connection, Officer Bisnette glanced to his left and noticed the defendant, a black male, unknown to him at that time, standing on a sidewalk on the Waverly Street side of the French Connection, approximately seventy yards away from the cruiser. The defendant was standing near a parked Ford Explorer sport utility vehicle (SUV).[2] Officer Bisnette observed a white male, whom he knew to be a

---

[1]The front entrance to the French Connection faces out onto Grafton Street. The left side of the building runs along Waverly Street.

[2]Officer Bisnette testified that when he first noticed the defendant, he saw another black man walking away from the area where the defendant was standing on Waverly Street. Officer Bisnette observed this second man putting something in his pocket and walking toward Penn Street. The defendant meanwhile stood near the parked SUV, counting money. Officer Bisnette believed a drug sale had occurred between the defendant and the other man. He positioned his cruiser so as to gain a better view of the scene. No other detail was offered by the Commonwealth as to this episode.

The judge made no findings as to this initial episode described by Officer Bisnette. The Commonwealth argues that the judge misapprehended the officer's testimony and that his failure to make findings on this aspect of the testimony amounts to clear error. We conclude that the judge simply did not

bartender at another Worcester drinking establishment (Charley's Tavern), leave the French Connection and walk towards the defendant.

Officer Bisnette observed the defendant hand the man an unidentified item. From his vantage point, Officer Bisnette could not identify the item, and he could offer no particulars as to its size, shape, or color. He then saw the defendant counting cash.[3] Meanwhile, the white male went back inside the bar, putting the item in his pocket. Officer Bisnette believed he had witnessed a drug transaction.

Officer Bisnette drove his cruiser about one hundred yards past the French Connection, along Grafton Street. He then turned the cruiser back toward the area in the front of the bar. He brought the cruiser to a halt at a spot where Penn, Waverly, and Grafton Streets converge. Officer Bisnette drove onto Waverly Street, initially passing by the defendant, who was on the sidewalk, before parking the cruiser seventy yards in front of the SUV. As Officer Bisnette drove by, he observed the defendant put the money in his pocket and get into the SUV. There was no other vehicle between the SUV and the cruiser. Officer Bisnette radioed for a check of the registration for the SUV. At this point, Officer Bisnette made a decision to stop the SUV and conduct a threshold inquiry of the defendant.

While Officer Bisnette was watching the SUV and waiting

accept the Commonwealth's claim that this discrete episode was suspicious in nature, or material to the next incident described by the officer. See *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 491 (2001). We cannot say on this record that the judge was clearly wrong to base no findings on this, at best, highly ambiguous testimony.

[3]There was a discrepancy on this point between the officer's testimony before the grand jury and his testimony at the hearing on the suppression motion.

Before the grand jury, the officer made no mention of money having passed between the defendant and the white male outside the bar; at the suppression hearing, he testified that the white male passed money to the defendant. The inconsistency was brought out in cross-examination of the officer. He offered no explanation for the change in his account on this important piece of the episode. Based on his findings, it is evident that the judge did not accept the officer's testimony that he observed money changing hands. Moreover, the passing of money for an undescribed item, without more, would not amount to reasonable suspicion or probable cause. See *Commonwealth* v. *Ellis*, 12 Mass. App. Ct. 476, 477-478 (1981).

for a radio report of the registration information, he observed what he thought was the defendant's head in the driver's seat "go down and move around." The defendant then started the SUV and drove it past the parked cruiser. Officer Bisnette followed, driving behind the SUV on Waverly Street and finally on Green Street. Before starting off, Officer Bisnette radioed for back-up to assist him; officers in three police cruisers quickly responded and arrived in the area. While on Green Street, with back-up in close range, Officer Bisnette activated his cruiser's siren and overhead lights and caused the SUV to pull over and stop.

Officer Bisnette approached the defendant, who was driving the SUV, and requested his license and registration, which the defendant produced. There were three female passengers in the SUV. By this point, Officer Bisnette had been informed (by police check) that one Corey D. Clark was the owner of the SUV, and that the vehicle's registration was valid. There was no evidence of outstanding warrants for Clark, and the officer had not observed any traffic violations as he followed the SUV.

Officer Bisnette asked if anyone in the SUV had anything the officer should know about. The defendant said: "No." Officer Bisnette asked: "Any drugs?" The defendant replied: "No, no, no drugs. I'm done with that shit. You can search if you wish."

Officer Bisnette asked again if the defendant had anything. The defendant said no. Officer Bisnette told the defendant that he had witnessed what he believed to be a drug transaction. The defendant replied: "No way," adding, "[t]hat's a friend who works at Charley's Tavern." The defendant repeated that he had nothing and reiterated that the officer could search.

Officer Bisnette asked the defendant to step out of the SUV. The defendant complied. Without incident, the defendant was led to the front of the cruiser, where he remained with his hands on his head. Officer Bisnette pat frisked the defendant and found no drugs or weapon on him. The three female passengers were then ordered out of the SUV. Next, Officer Bisnette, with another officer, Arthur Tarckini, searched the interior of the SUV. Officer Tarckini noticed that the SUV's center console was loose; he pushed it aside and found a firearm, cocaine, and

one bag containing a green leafy substance. The defendant was arrested and transported to the police station for booking.

*Motion judge's decision.* The judge concluded that the officer's observations did not justify a stop of the SUV for a threshold inquiry. The judge determined the officer had acted on nothing more than a "hunch," an inadequate basis for such police action. In reaching his conclusion, the judge reasoned: "There are too many alternative explanations, most of them innocent, which exist which could explain the facts presented to Bisnette and negate any suspicion that [the defendant] has committed, is committing or is about to commit a crime."

*Standard of review.* For purposes of reviewing a ruling on a suppression motion, we are bound by a judge's subsidiary findings of fact absent clear error. See *Commonwealth* v. *Sanna*, 424 Mass. 92, 97 (1997); *Commonwealth* v. *Williams*, 46 Mass. App. Ct. 181, 182 (1999); *Commonwealth* v. *Ciaramitaro*, 51 Mass. App. Ct. at 639 n.3. "The weight and credibility to be given testimony is for the judge." *Commonwealth* v. *Gentile*, 437 Mass. 569, 573 (2002). In assessing credibility, the judge has wide discretion to accept all, some, or none of a witness's testimony offered at a suppression hearing. See *Commonwealth* v. *Scott*, 52 Mass. App. Ct. 486, 491 (2001).

While we accept the motion judge's subsidiary findings of fact absent clear error, we review independently the judge's ultimate findings and conclusions of law. *Commonwealth* v. *Jimenez*, 438 Mass. 213, 218 (2002). "Our duty is to make an independent determination of the correctness of the judge's application of constitutional principles to the facts as found." *Commonwealth* v. *Vesna San*, 63 Mass. App. Ct. 189, 190 (2005), quoting from *Commonwealth* v. *Scott*, 440 Mass. 642, 646 (2004). See *Commonwealth* v. *Mercado*, 422 Mass. 367, 369 (1996).

*The stop.* We begin our analysis by considering whether Officer Bisnette had a legally sufficient basis for stopping the defendant's car following his observations of the defendant near the French Connection. We are guided by the following constitutional principles.

"[A] police officer may stop an individual and conduct a threshold inquiry if the officer reasonably suspects that such

individual has committed, is committing, or is about to commit a crime. To qualify as 'reasonable,' the officer's suspicion 'must be based on specific, articulable facts and reasonable inferences drawn therefrom.' The standard is objective: 'would the facts available to the officer at the moment of the seizure or the search "warrant a [person] of reasonable caution in the belief" that the action taken was appropriate?' " *Commonwealth* v. *Mercado*, 422 Mass. at 369 (citations omitted). See *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. 48, 51 (2000). A "hunch" or "good faith" on the part of the police cannot meet this constitutional standard. See *Commonwealth* v. *Lyons*, 409 Mass. 16, 19 (1990); *Commonwealth* v. *Grandison*, 433 Mass. 138, 139 (2001).

The judge found that the specific facts on which Officer Bisnette based the stop of the defendant were as follows: (1) from a distance of seventy yards Officer Bisnette, an experienced officer, observed the defendant standing by his vehicle on a well lit sidewalk near the French Connection, in a high drug area, at approximately 11:20 P.M.; (2) next he noticed a man come out of the French Connection and proceed toward the defendant; (3) Officer Bisnette recognized the second person as a bartender from another Worcester bar, Charley's Tavern; (4) he observed the defendant hand "an item" to the other man; (5) the defendant then appeared to count money; and (6) the man who had come out of the French Connection then went back into the bar.

The motion judge concluded, and we agree, that the officer acted on a mere hunch. Apart from the fact that the general area was known to be a high crime area, there is nothing in this record to suggest the officer had any specific information suggesting that a drug sale was likely to occur at this location. Compare *Commonwealth* v. *Kennedy*, 426 Mass. 703, 704 (1998) (officer had received numerous complaints about drug dealing at a particular intersection from neighbors and a store owner); *Commonwealth* v. *Sweezey*, 50 Mass. App. Ct. at 49 (officers conducting a surveillance in a restaurant parking lot known to them as one where drug transactions frequently took place); *Commonwealth* v. *Rosario*, 54 Mass. App. Ct. 914, 914-915 (2002) (informant described with particularity the individual

vehicle, the time of day, and location of drug transaction). Nor did the police know either of these men to be a drug dealer or user. Compare *Commonwealth* v. *Kennedy*, 426 Mass. at 704 (individual observed by the officer in a hand-to-hand exchange with the defendant was a known drug dealer); *Commonwealth* v. *McCoy*, 59 Mass. App. Ct. 284, 286 (2003) (person observed passing cash to the defendant was recognized by police as a drug abuser). Cf. *Commonwealth* v. *Albert*, 51 Mass. App. Ct. 377, 378 (2001) (officers recognized a truck as having a prior connection to drug activity).

Also, the officer did not suspect that criminal activity was afoot due to any furtive or unusual movements by the defendant or anyone else who interacted with him, including the passengers in the SUV. See *Commonwealth* v. *Kennedy*, 426 Mass. at 708-709 ("the quickness of the interaction . . . reasonably could be interpreted by the officer as suspicious conduct"); *Commonwealth* v. *Torres*, 433 Mass. 669, 674 (2001).

In sum, we conclude that the judge's findings of fact are not clearly erroneous, and that reasonable suspicion for the stop was lacking. In light of this conclusion, we need not consider the Commonwealth's claims that the defendant's conduct following the stop (i.e., his supposedly inculpatory statement that he had no drugs because "I'm done with that shit," and his alleged invitation to the officer to search) gave rise to probable cause or consent to search. The defendant's motion to suppress was properly allowed.

*Order allowing motion to suppress affirmed.*