NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-172                                          Appeals Court


COMMONWEALTH  vs.  RONALD FREEMAN.


No. 14-P-172.

Middlesex.      December 4, 2014. - June 3, 2015.

Present:  Kafker, Grainger, & Agnes, JJ.


Controlled Substances.  Practice, Criminal, Motion to
     suppress. Constitutional Law, Search and seizure.  Probable
     Cause. Search and Seizure, Probable cause, Threshold police
     inquiry, Reasonable suspicion.  Threshold Police Inquiry.


     Indictments found and returned in the Superior Court
Department on January 17, 2012.

     A pretrial motion to suppress evidence was heard by Garry
V. Inge, J.

     An application for leave to prosecute an interlocutory
appeal was allowed by Francis X. Spina, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by him to the Appeals Court.

     Eric A. Haskell, Assistant District Attorney, for the
Commonwealth.
     Rebecca Kiley, Committee for Public Counsel Services, for
the defendant.


     AGNES, J.  This is an interlocutory appeal arising out of

indictments charging the defendant, Ronald Freeman, with

unlawful possession of heroin with the intent to distribute in violation of G. L. c. 94C, § 32(a), second or subsequent offense, G. L. c. 94C, § 32(b); and unlawful possession of heroin in a school zone in violation of G. L. c. 94C, § 32J. The sole question presented for our consideration is whether the observation of an exchange between two men in the street made by an experienced narcotics investigator provided him with probable cause to believe a drug transaction had occurred. Based on the investigator's observation of two men on a street corner counting money, one of whom was known to be a drug user, the nature of the exchange that took place moments later between one of those two men and the defendant, and the location in which the events took place, we conclude the detective had probable cause to make an arrest. We therefore reverse the order allowing the defendant's motion to suppress.

Background. On July 26, 2011, at approximately 6:30 P.M., Detective Brian Hussey, an experienced narcotics investigator, was conducting surveillance with his partner, Detective Kevin Donofrio, in an area of Cambridge bordering Cambridgeport and Central Square. Within the past two months, there had been more than a dozen reports of increased drug activity in that area. The location is a densely populated residential area with numerous small businesses and parks.

Detective Hussey initially observed two men, standing next to each other on the corner of Magazine and Prince Streets, counting paper money. He recognized one of the men as a drug user. The other man was unknown to the police. The officers maintained their surveillance and observed the two men walk two blocks and then separate. The unidentified man turned onto Fairmont Street and walked past the officers, who were seated in their surveillance vehicle. Detective Hussey exited the vehicle and followed the unidentified man on Fairmont Street. The unidentified man, who was talking on a cellular telephone as he walked, remained in the area of Fairmont Street between Andrew and Pleasant Streets, for about one minute.

Detective Hussey next observed another male (later identified as the defendant) walking from the direction of Pleasant Street toward the unidentified man the detective had been following. The two men met and began talking to each other. They then turned and began walking side-by-side in the direction of Detective Hussey. While the two men stood in the middle of Fairmont Street, Detective Hussey, who was standing about forty to fifty feet away, observed the unidentified man hand what appeared to be unfolded money to the defendant, who, in turn, passed an object, small enough to fit in the palm of a

hand, to the unidentified man. The men parted and went in opposite directions after the exchange was completed.[1]

The unidentified man walked away on Andrew Street and was not apprehended. The defendant was counting paper money as he walked in the direction of Detective Hussey. Detective Hussey continued his surveillance until the defendant put the paper money in his pocket. He approached the defendant, displayed his badge, and informed him he was conducting a drug investigation. The defendant raised his hands and, as he did, dropped a cellular telephone. He was then handcuffed and placed under arrest. The defendant was read the Miranda rights and stated that he understood them. A patfrisk followed, which uncovered a black pouch hidden in the area of the defendant's crotch containing eight individual paper folds of heroin. The defendant also made a number of statements to the police, including his denial of meeting up with anyone and his admission that he had "dope" on him.

Discussion. 1. Standard of review. We accept the judge's subsidiary findings of fact, give appropriate deference to his ultimate findings and rulings, and independently review the correctness of the judge's application of constitutional

---

[1] Detective Hussey testified that the two men separated as soon as the hand-to-hand exchange occurred, and that this was a factor in his assessment of probable cause.

principles to the facts as found.  See Commonwealth v. Fisher, 86 Mass. App. Ct. 48, 50 (2014).

2.  Motion to suppress.  In allowing the defendant's motion to suppress, the judge relied primarily on Commonwealth v. Ellis, 12 Mass. App. Ct. 476 (1981), and Commonwealth v. Clark, 65 Mass. App. Ct. 39 (2005), and reasoned that the observation of an exchange between two unknown individuals of a small object for money on a public street, standing alone, amounts to no more than a hunch that a crime had been committed, and "does not amount to reasonable suspicion."  These two cases are distinguishable from the facts in this case.

In Ellis, supra at 476-477, we concluded that a police officer lacked justification to stop a motor vehicle after he observed several people conversing through the window of the vehicle while it was in a parking lot, one of the individuals passing some paper money into the vehicle, and one of the occupants of the vehicle giving something to this individual. Similarly, in Clark, supra at 40, the police officer was driving past a bar when he observed a person he knew to be a bartender at a different bar walk over to the defendant, who was unknown to him.  The defendant was standing by his parked automobile on a well-lit street in a "high drug area" at 11:20 P.M.  Id. at 40-41.  The officer saw the defendant hand "an unidentified item" to the other man, and then observed the defendant counting

money.  Id. at 41.  In concluding that these observations did not justify the subsequent stop of the defendant, we noted that "[a]part from the fact that the general area was known to be a high crime area, there is nothing in this record to suggest the officer had any specific information suggesting that a drug sale was likely to occur at this location."  Id. at 44.

In the present case, on the other hand, the events observed by Detective Hussey did not commence with his observation of a hand-to-hand exchange, but included the observation he made minutes earlier and near the location where this exchange took place, of one of the men involved in this exchange meeting with another person who was known to the police as a drug user.  This initial observation also included the two men counting money.[2] An additional consideration that weighs in favor of probable cause is that the area in which these events unfolded was not described by the police simply in generic terms as a "high

---

[2] Despite the fact that the known drug user observed by Detective Hussey counting paper currency with the unidentified man did not interact with the defendant, the sequence of events in which the unidentified man was first seen with the known drug user, and then very soon thereafter was seen participating in the exchange of money for an item with the defendant, was enough for the experienced narcotics investigator to conclude that the events were related, and indicative of a drug transaction.  See Commonwealth v. Santaliz, 413 Mass. 238, 241-242 (1992); Commonwealth v. Kennedy, 426 Mass. 703, 708-711 (1998). Contrast Commonwealth v. Levy, 459 Mass. 1010, 1011-1012 (2011) ("[N]either the defendant nor anyone else involved in the events was recognized as having a history with illegal drugs"); Clark, supra at 45 (neither party involved in events observed by police had any connection to drug activity).

crime" or a "high drug" location.  See Commonwealth v. Cheek, 413 Mass. 492, 496-497 (1992).  Here, the judge found that "[w]ithin a month or two prior to that day [day of the exchange], roughly 10-15 anonymous complaints of increased drug activity in that area had been received."  However, the judge reasoned that there was "no evidence that the transaction occurred in a high crime area," because there was no "specific information suggesting that a drug sale was likely to occur at the subject location."  This conclusion disregards the interlocking character of these reports of increased drug activity.[3]  The police may not have had any specific information about particular individuals engaged in selling drugs in the location in question, but more than a dozen recent reports of "increased drug activity," even if anonymous, are sufficient to contribute to the circumstantial evidence that a drug transaction had occurred.

The case fits within the framework of those decisions in which the Supreme Judicial Court has assessed whether the "silent movie" observed by an experienced narcotics investigator reveals a sequence of activity consistent with a drug sale. See Commonwealth v. Santaliz, 413 Mass. 238, 242

---

[3] Detective Hussey testified that while he did not have personal knowledge of drug activity in the area where these events took place, he knew that the police had recently received, and had investigated, ten to fifteen complaints of increased drug activity.

(1992); Commonwealth v. Kennedy, 426 Mass. 703, 708-711 (1998); Commonwealth v. Levy, 459 Mass. 1010, 1011-1012 (2011); Commonwealth v. Stewart, 469 Mass. 257, 262-263 (2014). "In dealing with probable cause . . . we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Commonwealth v. Kennedy, supra at 710-711, quoting from Brinegar v. United States, 338 U.S. 160, 175 (1949). "The officers must have entertained rationally 'more than a suspicion of criminal involvement, something definite and substantial, but not a prima facie case of the commission of a crime, let alone a case beyond a reasonable doubt.'" Santaliz, supra at 241, quoting from Commonwealth v. Rivera, 27 Mass. App. Ct. 41, 45 (1989).

This case compares favorably with Commonwealth v. Santaliz, supra, where the Supreme Judicial Court regarded four factors as significant in contributing to the existence of probable cause: (1) "the unusual nature of the transaction";[4]

---

[4] The observations made by Detective Hussey of two men counting money, one of whom then walks away a short distance while talking on a cellular telephone and meets with another man, the defendant, who hands over an object small enough to fit in the palm of one hand in exchange for paper currency, qualifies as "unusual" as that term is used in Santaliz, supra.

(2) "the furtive actions of the participants";[5] (3) the encounter

occurred in a location associated with drug activity;[6] and (4) an

experienced drug investigator "considered the event[s] as

revealing a drug sale.[7]  Moreover, here, as in Kennedy, supra at

_____

[5] Here, the object exchanged between the defendant and the
unidentified male was so small and handed over so quickly that
it could not be identified, and as soon as the exchange
occurred, the two men separated and walked away in opposite
directions.  This conduct supplies an objective basis for the
officer to view it as "furtive" as contrasted with what one
court has described as police characterizations of behavior as
furtive that consist of no more than "subjective, promiscuous
appeals to an ineffable intuition."  United States v.
Broomfield, 417 F.3d 654, 655 (7th Cir. 2005).

[6] The testimony of Detective Hussey that there was an
"increase" in drug activity in the area and that there had been
ten to fifteen reports of drug transactions within a month or
two of the night in question is significant.  "[A] tip, 'even
though not [by itself] qualifying under Aguilar [v. Texas, 378
U.S. 108  (1964)], may be used to give such additional color as
is needed to elevate the information acquired by police
observation above the floor required for probable cause.'"
Commonwealth v. Hardy, 63 Mass. App. Ct. 210, 214 (2005),
quoting from Commonwealth v. Saleh, 396 Mass. 406, 411 (1985).

It should be noted that the judge credited the testimony of
Detective Hussey about reports of an increase in reported drug
dealing in the area in question, but declined to attach any
legal significance to it because there was an "absence of
specific information suggesting that a drug sale was likely to
occur at the subject location."  While numerous anonymous
reports to the police of drug sales in a location do not suffice
to establish probable cause or even reasonable suspicion that a
particular encounter involves a hand-to-hand drug transaction,
such reports do supply a context on which an experienced
narcotics investigator can rely in interpreting events that
might otherwise seem innocuous or coincidental.

[7] Detective Hussey, who had experience and specialized
training in street-level drug transactions, was in a specialized
drug investigation unit, and was assigned to conduct

711, the observation of an actual object exchanged "is an important piece of evidence that supports probable cause." These facts are certainly as indicative of probable cause as those deemed sufficient in Commonwealth v. Santaliz, supra, and Commonwealth v. Kennedy, supra.

Conclusion. The essence of probable cause is a reasonable, objective basis that would lead a person of ordinary prudence to believe a crime has been, is being, or is about to be committed. See Santaliz, supra at 241. While there could have been an innocent explanation for the events observed by Detective Hussey, he was entitled to view them through the lens of his specialized training and experience and conclude that more than mere coincidence was involved, and that he had witnessed a drug transaction. For these reasons the order allowing the defendant's motion to suppress is reversed.[8] The case is

surveillance in the area where the encounters took place, considered the nature of the exchange and the departure of the two men immediately thereafter as indicative of a street-level drug transaction.

[8] The judge's suppression order included both the physical evidence seized from the defendant's person ($69 in United States currency and the drugs found inside the black pouch), as well as the statements made after the defendant was arrested. Because the judge found that the defendant understood his Miranda warnings and no argument is made by the defendant as to why his statements should be suppressed apart from the claim that the arrest was invalid, those statements will be admissible at trial unless excluded for reasons unrelated to the defendant's arrest.

remanded for the entry of an order denying the defendant's motion and for further proceedings consistent with this opinion.

<u>Order allowing motion</u>
<u>to suppress reversed</u>.