NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-1619                                          Appeals Court

COMMONWEALTH  vs.  JAMES KEARSE.

No. 18-P-1619.

Suffolk.    November 1, 2019. - April 9, 2020.

Present:  Agnes, Sullivan, & Blake, JJ.

Firearms.  Constitutional Law, Investigatory stop, Reasonable
    suspicion, Search and seizure, Stop and frisk.  Search and
    Seizure, Reasonable suspicion, Threshold police inquiry.
    Threshold Police Inquiry.  Practice, Criminal, Motion to
    suppress.

Indictments found and returned in the Superior Court
Department on May 24, 2016.

A motion to suppress evidence was heard by Sharon E.
Donatelle, J., and a motion for reconsideration was considered
by her.

An application for leave to prosecute an interlocutory
appeal was allowed by Elspeth B. Cypher, J., in the Supreme
Judicial Court for the county of Suffolk, and the appeal was
reported by her to the Appeals Court.

Ian MacLean, Assistant District Attorney, for the
Commonwealth.
Dennis M. Toomey for the defendant.

AGNES, J.  After observing the defendant, James Kearse, standing in the vicinity of two other men who engaged in a "quick hand shake," Brigido Leon, an officer in the Boston Police Department's drug control unit (DCU), believed he had observed a hand-to-hand drug transaction.  Officer Leon radioed other officers to conduct an investigatory stop of the defendant and his companion.  As a result of this stop, the defendant was pat frisked twice, which ultimately lead to the discovery of a loaded revolver.[1]  Following an evidentiary hearing, a judge of the Superior Court allowed the defendant's motion to suppress the firearm concluding that the stop of the defendant was not constitutionally permissible.  A single justice of the Supreme Judicial Court granted the Commonwealth leave to file an interlocutory appeal from that order and transmitted the matter to the Appeals Court.  See Mass. R. Crim. P. 15 (a) (2), as amended, 476 Mass. 1501 (2017).  Concluding that police did not have reasonable suspicion to stop the defendant in these circumstances, we affirm.

---

[1] The defendant was subsequently charged with carrying a loaded firearm without a license, G. L. c. 269, § 10 (n), carrying a firearm without a license as a second offense, G. L. c. 269, § 10 (a) & (d), and possession of ammunition without a firearm identification card, G. L. c. 269, § 10 (h) (1).

Background.  We summarize the facts found by the motion judge.[2]  Officer Leon had extensive experience in drug and firearm related investigations.  On the afternoon of March 2, 2016, Officer Leon was conducting surveillance with other DCU officers in the area of Talbot and Wales Streets in the Dorchester section of Boston, which he described as a high crime area with frequent stabbings, shootings, and drug activity.[3]  While on patrol, Officer Leon observed the defendant with a companion, Domenic Yancy.  The judge did not make any findings that the defendant or Yancy were known drug dealers or users, or otherwise known to the police.  Officer Leon observed a third unidentified male (third male) "hop a fence," "cut through a yard," and approach the defendant and Yancy on the sidewalk of Wales Street.  Yancy and the third male engaged in a "quick hand shake" "as the [d]efendant stood approximately five feet away

---

[2] The Commonwealth does not challenge any of the subsidiary findings of fact found by the motion judge.  No transcript of the evidence was prepared and filed with this court.  In the absence of such a transcript, there is no basis for an appellate court to engage in "'interstitial' supplementation of [the] motion judge's findings with uncontroverted facts."  Commonwealth v. Jones-Pannell, 472 Mass. 429, 436 (2015).

[3] Officers had received a tip that drugs were being distributed out of a location near Kingsdale and Browning Avenues.  The tip was from an unknown source and the police did not establish its reliability.  See Commonwealth v. Upton, 394 Mass. 363, 375 (1985).  The tip pertained to a different area that the Commonwealth describes in its appellate brief as "nearby" but no other information about the tip is in the record.

and looked around." The judge specifically found that "[t]he entire encounter lasted less than two to three minutes after which the [third] male went back over the fence and the [d]efendant and Yancy walked back through Franklin Field Park." The judge also found that no interaction took place between the defendant and the third male "and no additional evidence presented relating to any interaction between [the defendant] and Yancy either before or after the quick handshake."

Believing that he had observed a hand-to-hand drug transaction between Yancy and the third male, Officer Leon radioed other officers to stop Yancy and the defendant. Minutes later, five to six uniformed and plain-clothed officers arrived to stop the defendant and Yancy a short distance away. Unknown to Officer Leon, the responding officers pat frisked the defendant and Yancy prior to Officer Leon's arrival. No weapons or contraband were discovered as a result of these patfrisks. When Officer Leon arrived, both the defendant and Yancy were unrestrained. Officer Leon had a conversation with Yancy during which Yancy told police he had marijuana on him and gave a statement about where he was coming from that was not consistent with what Officer Leon had just observed.

During the conversation with Yancy, the defendant was standing twenty to twenty-five feet away. At this time, Officer Leon observed the defendant move his body in such a way that he

believed, based on his extensive training and experience, that the defendant might be concealing a gun. His observations included that the pocket of the defendant's "coat was sagging as if it contained something heavy," that the defendant would "side-step" or reposition himself when an officer was near him, and that the defendant was "checking himself" by patting himself in a manner consistent with a person carrying a firearm without a holster. After making these observations, Officer Leon proceeded to pat frisk the defendant over the defendant's black puffy coat. Because he was unable to accomplish a patfrisk of the defendant due to his bulky layers, Officer Leon unzipped the defendant's coat and pat frisked over the defendant's sweatshirt. At this time, Officer Leon "felt a hard object that he immediately knew was the butt of a gun. [Officer Leon] lifted up the defendant's sweatshirt and saw a revolver."

Discussion. 1. The stop. "In reviewing a ruling on a motion to suppress, we accept the judge's findings of fact absent clear error but conduct an independent review of his ultimate findings and conclusions of law." Commonwealth v. Montoya, 464 Mass. 566, 576 (2013). An investigatory stop is permitted only where police have "reasonable suspicion that the person seized has committed, is committing, or is about to commit a crime." Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007). See Terry v. Ohio, 392 U.S. 1, 21 (1968). Reasonable

suspicion "must be grounded in 'specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a hunch.'" DePeiza, supra, quoting Commonwealth v. Scott, 440 Mass. 642, 646 (2004). "Reasonable suspicion is measured by an objective standard, . . . and the totality of the facts on which the seizure is based must establish 'an individualized suspicion that the person seized by the police is the perpetrator' of the crime under investigation." Commonwealth v. Meneus, 476 Mass. 231, 235 (2017), quoting Commonwealth v. Warren, 475 Mass. 530, 534 (2016). See Commonwealth v. Hilaire, 92 Mass. App. Ct. 784, 790-791 (2018). The test is not whether the officer is acting in good faith. Commonwealth v. Grandison, 433 Mass. 135, 139 (2001). Rather, "[t]he test is an objective one." Commonwealth v. Bacon, 381 Mass. 642, 643 (1980), quoting Commonwealth v. Silva, 366 Mass. 402, 406 (1974). In particular, a police officer's suspicion that a crime has occurred will not be regarded as reasonable under art. 14 of the Massachusetts Declaration of Rights, unless "[t]hat suspicion [is] grounded in specific, articulable facts and reasonable inferences [drawn] therefrom rather than on a hunch" (quotation omitted). Warren, supra at 534. "We have no hard and fast rule governing the required level of particularity [of a description]; our constitutional analysis ultimately is practical, balancing the risk that an innocent person . . . will be needlessly stopped

with the risk that a guilty person will be allowed to escape." Commonwealth v. Lopes, 455 Mass. 147, 158 (2009). Furthermore, "[d]uring a stop for which there is constitutional justification, . . . a patfrisk is permissible only where an officer has reasonable suspicion that the suspect is armed and dangerous." Commonwealth v. Torres-Pagan, 484 Mass. 34, 36 (2020).

Based on these principles and an examination of similar cases, we conclude that Officer Leon's observations failed to establish reasonable suspicion that the defendant was engaged in criminal activity when the order to stop him was given by Officer Leon. The Commonwealth does not dispute that the defendant was stopped, in the constitutional sense, when the five to six officers stopped and pat frisked him in response to Officer Leon's radio broadcast. As we must determine whether reasonable suspicion existed based on the information developed by police by that time, see Commonwealth v. Matta, 483 Mass. 357, 360 (2019), the timing of the stop constrains us to exclude from consideration the crucial facts that Officer Leon later discovered Yancy was lying about his whereabouts before the stop and Officer Leon's later observation that the defendant appeared to be carrying a gun.

In addition to presence in a high crime area, the only factors identified by Officer Leon that are relevant to whether

the reasonable suspicion standard was met are the following: (1) during the afternoon hours an unidentified third male hopped over a fence and cut through a yard; (2) Yancy and that male engaged in a "quick hand shake" that Officer Leon believed to be a drug transaction while the defendant stood nearby, looked around, but did not interact with the third male or with Yancy; and (3) after several minutes, the third male departed back over the fence and the defendant and Yancy walked back through Franklin Field Park.

A quick hand shake in a high crime area between individuals unknown to the police, even when viewed by an experienced investigator, standing alone, does not provide more than a hunch that a drug transaction occurred, and certainly no more than a hunch that a person standing near the individuals who engaged in the hand shake was a participant in criminal activity. See Meneus, 476 Mass. at 238 (simply because activity occurred in high crime area does not for that reason mean that activity was suggestive of criminal activity; inference that criminal activity is underway must meet objective standard of reasonableness). As we observed in Commonwealth v. Ellis, 12 Mass. App. Ct. 476, 477 (1981), "[t]here was no evidence to color the transaction." In Ellis, we concluded that evidence that a police officer observed several people conversing through the window of the vehicle while it was in a parking lot, one of

the individuals passing some paper money into the vehicle, and one of the occupants of the vehicle giving something to this individual, was not sufficient to constitute reasonable suspicion that a drug transaction had occurred.  Id.  Similarly, in Commonwealth v. Clark, 65 Mass. App. Ct. 39, 40-41 (2005), a police officer driving past a bar observed a person he knew to be a bartender at a different bar walk over to the defendant, who was unknown to the officer.  It was 11:20 P.M. in a high crime area.  The officer saw the defendant hand "an unidentified item" to the other man, and then observed the defendant counting money.  In concluding that these observations did not justify the subsequent stop of the defendant, we noted that "[a]part from the fact that the general area was known to be a high crime area, there is nothing in this record to suggest the officer had any specific information suggesting that a drug sale was likely to occur at this location."  Id. at 44.  The facts before us in this case are distinguishable from other cases such as Commonwealth v. Kennedy, 426 Mass. 703, 708-711 (1998), and Commonwealth v. Santaliz, 413 Mass. 238, 241-242 (1992), in which justification for an arrest or a stop existed because "the 'silent movie' observed by an experienced narcotics investigator reveal[ed] a sequence of activity consistent with a drug sale." Commonwealth v. Freeman, 87 Mass. App. Ct. 448, 452 (2015).

It is not necessary in cases such as this that the police officer observe an exchange of items or actually see drugs or cash, but it is necessary that the observations by the police occur in a factual context that points to criminal activity. See Commonwealth v. Levy, 459 Mass. 1010, 1011 (2011). Contrast Commonwealth v. Hernandez, 448 Mass. 711, 714 (2007) (reasonable suspicion existed where, prior to shaking hands, police observed defendant pacing back and forth in high drug trafficking area before giving person item hidden in his shoe). Indeed, "other than the normal social intercourse that occurs with some frequency on the streets of Boston's neighborhoods, nothing [the officer observed] supports the claim of conduct consistent with a drug transaction." Commonwealth v. Ilya I., 470 Mass. 625, 631 (2015).

The fact that Officer Leon was an experienced drug investigator, while relevant to an assessment of reasonable suspicion, is not a substitute for details about how drug transactions occur based on that experience. Compare Commonwealth v. Gomes, 453 Mass. 506, 511-512 (2009) (experienced drug investigator observed person who participated in hand-to-hand exchange of something also ingest something that was in his hand as police approached; officer explained that "drug dealers and users often ingested drugs to prevent the recovery of evidence"). Subjecting a quick handshake, without

more, to the scrutiny of a nonconsensual police encounter is not consistent with the reality that "law-abiding citizens live and work in high-crime areas. Those citizens are entitled to the protections of the Federal and State Constitutions, despite the character of the area." Id. at 512, quoting Commonwealth v. Holley, 52 Mass. App. Ct. 659, 663 (2001). See Meneus, 476 Mass. at 238.

In addition, we note that this is not a case where "the aggregation of otherwise innocent activities may give rise to reasonable suspicion." Commonwealth v. Stephens, 451 Mass. 370, 385 (2008). Here, the third male's hopping a fence to meet Yancy and the defendant standing nearby did not meaningfully add to the calculus. Contrast id. at 384 (reasonable suspicion existed where defendants followed "'the precise script of the typical illegal narcotic transaction' in that area of Lawrence: . . . i.e., had met at a parking lot in an area known for illicit drug dealing and moved to a 'more remote location' to complete the illegal transaction"). Nor is this a case where a participant to the alleged drug transaction was known to police. Contrast Commonwealth v. Sanders, 90 Mass. App. Ct. 660, 665 (2016) (concluding police officer could have inferred person who reached hand into vehicle window was engaged in drug transaction "with the addition of the remaining and critically important factor that the defendant was known to the officer as a person

who previously had been arrested for distributing cocaine").

Contrast also Commonwealth v. Stewart, 469 Mass. 257, 261 (2014)

(reasonable suspicion existed where officer knew defendant had

been arrested on drug distribution charge three years earlier in

same area and observed "three persons follow[] the defendant

down a narrow street often used by drug users, with [a] woman

counting currency as she walked, and then all four huddled

briefly together in a doorway, before they dispersed"); Freeman,

87 Mass. App. Ct. at 449 (probable cause standard established

"[b]ased on the investigator's observation of two men on a

street corner counting money, one of whom was known to be a drug

user, the nature of the exchange that took place moments later

between one of those two men and the defendant, and the location

in which the events took place").

Instead, we view this case as close to, but even less

compelling than, Clark, 65 Mass. App. Ct. at 44, where an

experienced officer witnessed the defendant, who was not a known

drug dealer or user, standing outside a bar at approximately

11:20 P.M. in a high drug area. A different man, also not a

known drug user, later came out of the bar and approached the

defendant, who handed him "an item," and after which the

defendant was observed counting money. Id. There, we held that

reasonable suspicion was lacking where, apart from the general

high crime nature of the area, there was nothing "to suggest the

officer had any specific information suggesting that a drug sale was likely to occur at this location" and "the officer did not suspect that criminal activity was afoot due to any furtive or unusual movements by the defendant or anyone else who interacted with him." Id. at 44-45. Here, by contrast, the encounter took place in the afternoon and there was no observation of an item being passed, or money being counted.

While the police undoubtedly could have continued their investigation by way of continued observation or a field interrogation observation,[4] see Commonwealth v. Murphy, 63 Mass. App. Ct. 11, 17 (2005), an immediate, nonconsensual stop of this defendant was not constitutionally justified.

2. The frisk. Even if we concluded that Officer Leon's observations were sufficient to constitute reasonable suspicion

---

[4] "A 'field interrogation observation' [FIO] has been described as an interaction in which a police officer identifies an individual and finds out that person's business for being in a particular area." Commonwealth v. Lyles, 453 Mass. 811, 813 n.6 (2009). FIOs are deemed consensual encounters because the individual approached remains free to terminate the conversation at will. See id. at 815. See also Commonwealth v. Cao, 419 Mass. 383, 388 (1995) ("The FIO was conducted in public, while the defendant was walking with friends in a parking lot, not while the defendant was in a confined space or in a car. [The officer] testified that during the encounter the defendant spoke with his friends and did not appear to be under any physical distress nor did he indicate at any time that he wished to leave. Under these circumstances, we cannot say that a reasonable person would have been sufficiently intimidated so as to feel that he or she could not terminate the encounter and walk away. Therefore, there was no seizure").

that the defendant was a participant in a drug transaction, there was no evidence at the point when he was first pat frisked that the defendant was armed. "The only legitimate reason for an officer to subject a suspect to a patfrisk is to determine whether he or she has concealed weapons on his or her person." Torres-Pagan, 484 Mass. at 39.[5]

3. Suppression. The Commonwealth argues that even if the first patfrisk was impermissible, evidence discovered as a result of the later patfrisk should not be suppressed because it was discovered independent of any prior illegality. However, the second patfrisk exploited information obtained as a result of the initial stop.[6] This proposition is not disputed by the Commonwealth, and there was no intervening event that broke the chain of causation. Having concluded that the initial stop was

---

[5] The result we reach turns on our view that the initial stop ordered by Officer Leon was unlawful. Nothing in our opinion should be understood to mean that Officer Leon's observations that a pocket of the defendant's coat was sagging as if it contained a heavy object and that the defendant moved as if he was trying to conceal something would not establish, in other circumstances, reasonable suspicion that the defendant was armed and dangerous. See DePeiza, 449 Mass. at 371-372.

[6] "In determining whether evidence derived from an illegal search or seizure must be suppressed, the issue is not whether but for the prior illegality the evidence would not have been obtained, but whether the evidence has been come at by exploitation of [that] illegality or instead by means sufficiently distinguishable to be purged of the primary taint" (quotation and ellipses omitted). Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019).

not justified by reasonable suspicion that a crime had been, was, or was about to be committed, the evidence was properly suppressed.

Order allowing motion to
suppress affirmed.

Order denying motion to
reconsider affirmed.