NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-355

COMMONWEALTH

vs.

MALIK CANNON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a stop of the defendant's vehicle, the defendant was charged with, inter alia, possession with intent to distribute a class B substance, carrying a loaded firearm without a license, and carrying a firearm without a license.[1] The defendant filed a motion to suppress evidence obtained from the traffic stop, which was denied. His motion for reconsideration of that ruling was also denied. The defendant then entered into a conditional plea agreement pursuant to Mass.

---

[1] The Commonwealth nol prossed additional charges for possession with intent to distribute a class B drug as a subsequent offense, possession of a large capacity firearm in a felony, and possession of a loaded machine gun. At the request of both parties, the judge dismissed a charge for possession of ammunition without a firearm identification card.

R. Crim. P. 12 (b) (6), as appearing in 482 Mass. 1501 (2019), in which he agreed to plead guilty to the charges while reserving the right to appeal from the order denying his motion to suppress.  He now argues on appeal that the traffic stop was unsupported by reasonable suspicion.  We agree.

Background.  In December 2021, New Bedford police officers were conducting undercover surveillance on a residential building in New Bedford; the building consisted of three apartments.  The third-floor apartment had been the subject of numerous complaints from the public, other tenants, and the landlord regarding suspected drug activity.  These complaints led to a search warrant being issued for the third-floor apartment; the warrant, which was never executed, had four targets, including the defendant.[2]  Over the course of several weeks, Detective Andrew Simmons witnessed several people approach the apartment building, enter through the back door, and come out within several minutes.  When the police stopped these individuals, they consistently found drugs in the individuals' possession.

On December 29, 2021, Simmons observed a black Acura, in which the defendant was a passenger, park in front of the

---

[2] Neither the search warrant nor its supporting affidavit was admitted in evidence, and these documents are not before us.

apartment building. Simmons did not recognize either the driver or the defendant. He watched as the defendant exited the vehicle, walked towards the back of the building, and entered through the back door; he did not know where the defendant went once inside the building. The driveway of the apartment building was occupied, so the Acura drove a short distance along the road and pulled over, obstructing another driveway. The Acura moved to accommodate a car leaving this driveway, drove around the block, parked on another street, and then pulled in across the street from the apartment building into which the defendant had gone. Within ten minutes, the defendant came back out of the building and returned to the Acura, and the car drove away. Simmons believed, based on these actions and his previous observations of the apartment building, that a drug transaction had occurred inside the third-floor apartment. He instructed another detective, Nathaniel Almeida, to stop the Acura.

Almeida did so, then recognized the defendant as one of the third-floor residents, whom Almeida testified was the target of the search warrant for the apartment. Almeida knew that the defendant claimed to be a gang member and was associated with other individuals who had been arrested with firearms. He also knew that two confidential informants had told New Bedford police officers that the defendant was in possession of a

3

firearm.[3]  Based on this information, Almeida ordered the
occupants out of the car and searched them.  The search
uncovered a firearm under the jacket the defendant was wearing
and ultimately led to the discovery of crack cocaine between the
defendant's buttocks.

Discussion.  "In reviewing a ruling on a motion to
suppress, we accept the judge's findings of fact absent clear
error but conduct an independent review of his ultimate findings
and conclusions of law."  Commonwealth v. Kearse, 97 Mass. App.
Ct. 297, 299 (2020), quoting Commonwealth v. Montoya, 464 Mass.
566, 576 (2013).  Before conducting an investigatory stop of a
vehicle, police must have "reasonable suspicion that [an
occupant of that vehicle] has committed, is committing, or is
about to commit a crime."  Kearse, supra at 300, quoting
Commonwealth v. DePeiza, 449 Mass. 367, 371 (2007).  "Reasonable
suspicion must be grounded in specific, articulable facts and
reasonable inferences [drawn] therefrom rather than on a hunch
(quotations and citation omitted)."  Kearse, supra.

We agree with the defendant that at the time of the stop,
the police did not have reasonable suspicion to believe that he
had committed, was committing, or was about to commit a crime.

---

[3] We note that Detective Drew Frenette testified that one
confidential informant had told him that the defendant was
"possibly" in possession of a firearm.

Apart from the fact that one of the three apartments in the building was suspected to be a hub for drug activity, the police did not have any information to suggest that the defendant had participated in a drug transaction.  At the time of the stop, neither Simmons nor Almeida knew who the occupants of the Acura were, so any information about the defendant's identity plays no role in our analysis.[4]  See Kearse, 97 Mass. App. Ct. at 301 ("the timing of the stop constrains us to exclude from consideration the crucial facts that [officers] later discovered").  See also Commonwealth v. Barreto, 483 Mass. 716, 720 (2019) (no reasonable suspicion where neither defendant nor pedestrian were known to officers conducting surveillance).  Cf. Commonwealth v. Gomes, 453 Mass. 506, 511 (2009) (reasonable suspicion where, inter alia, officer "was familiar with the defendant as an individual who previously had been arrested on drug charges").  This includes information about the defendant's possible possession of a firearm, his residency in the third-floor apartment, his association with people who possessed firearms, and his claimed gang membership.

---

[4] The judge's finding that at the time of the stop, police "had info re:  the [defendant] possessing a firearm" -- the basis for the stop of the Acura -- was not supported by the record and thus clearly erroneous.  See Kearse, 97 Mass. App. Ct. at 299.

Excluding this information, we are left with Simmons's observations of the defendant entering and then leaving a multi-unit residential building known for drug activity, and the continuing presence of the Acura.  Simmons could not see inside the building, so he did not know which of the three apartments, if any, the defendant was visiting.  He did not see the defendant engage in any kind of suspicious transaction.  See Commonwealth v. Smith, 55 Mass. App. Ct. 569, 573 (2002) (no reasonable suspicion where officer "did not observe any actual transaction or furtive activity on the part of the defendant").  He did not observe the defendant carrying anything suggesting contraband, either before or after he entered the building.  Cf. Commonwealth v. Sweezey, 50 Mass. App. Ct. 48, 52 (2000) (reasonable suspicion where defendant left scene with paper bag he did not have upon arriving at location).  After checking the license plate of the Acura, Simmons did not find anything suspicious, nor do we discern any inherently suspect quality to the fact that the driver of the Acura waited for the defendant in the area of the apartment building.  These movements by the Acura, even when combined with the defendant's actions, do "not meaningfully add to the [reasonable suspicion] calculus." Kearse, 97 Mass. App. Ct. at 303.

Because the information about suspected drug activity in the apartment building was as vague and unspecific as characterizing the neighborhood as being a "high crime area," the Commonwealth has failed to establish reasonable suspicion. See Commonwealth v. Grandison, 433 Mass. 135, 139 (2001) ("Just being in a high crime area is not enough to justify a stop"); Kearse, 97 Mass. App. Ct. at 302, quoting Gomes, 453 Mass. at 512 ("[L]aw-abiding citizens live and work in high-crime areas. Those citizens are entitled to the protections of the Federal and State Constitutions, despite the character of the area"); Commonwealth v. Clark, 65 Mass. App. Ct. 39, 44 (2005). Absent reasonable suspicion, the police are not permitted to stop every person who enters a multi-unit residential building for a short period of time, merely because a single unit is suspected or known to be a hub for drug activity.

In light of our conclusion that the police lacked reasonable suspicion to stop the Acura, we do not address the propriety of the subsequent exit order and patfrisk of the

defendant.  See Clark, 65 Mass. App. Ct. at 45.

The orders denying the motion to suppress and the motion for reconsideration are reversed, and the matter is remanded to the District Court for further proceedings.

<u>So ordered</u>.

By the Court (Desmond, Hand & Grant, JJ.[5]),

Clerk

Entered:  June 27, 2024.

---

[5] The panelists are listed in order of seniority.